This is a suit for compensation in which plaintiff claims to be totally and permanently disabled by reason of the development of a left inguinal hernia. From a judgment in favor of defendant, plaintiff prosecutes this appeal.
While in the employ of defendant, as a member of a maintenance crew, on July 31, 1945, plaintiff sustained a hernia on the right side as the result of a strain incurred in the effort of lifting a can of cement, and on August 3, 1945, he underwent an operation for the repair of the hernia.
Plaintiff bases his claim to compensation on the contention that he is suffering from a hernia on the left side, which has developed since the operation, and which is the direct result of an atrophic condition of the right testicle and cord and the pulling of the tissue on the left side.
The claims advanced by plaintiff are opposed by defendant on the ground that the hernia, occasioned by the accidental injury received in the course of employment, was repaired by a successful operation, and that all effects of any injury resulting from plaintiff's employment ceased prior to November 6, 1945, on which date compensation payments were terminated.
There is no question as to the original injury as the result of an accident in the course and scope of plaintiff's employment. We pretermit any discussion as to the actual existence vel non of a hernia on the left side, upon which point there is some conflict of testimony, inasmuch as the case may be determined on the proposition above set forth.
With the exception of very brief testimony by plaintiff himself, the record in this case is made up of the testimony of expert medical witnesses, and, since our conclusion must be based upon the opinions expressed by these distinguished gentlemen, we think it proper to set forth what we regard as the significant portions of the testimony of each.
Dr. M.W. Hunter testified that he made a complete examination of plaintiff on March 14, 1946. The questions which comprehended the point at issue, as propounded to this witness, and the answers thereto, are as follows:
"Q. Doctor, in the event an individual is operated on for a right inguinal hernia, and it is later disclosed that he has a relaxed ring on the left side, what, if any, relation is there as to cause and effect between the operation on the right side and the relaxed ring on the left side? A. There is no connection whatever.
"Q. Either as to the cause or effect? A. Either as to the cause or effect. In other words, surgery on the right side can not and will not cause a relaxation or a hernia on the opposite side.
"Q. It would not affect the opposite side at all? A. It would not affect the opposite side in any way."
From the testimony of Dr. John G. Snellings, a witness for defendant, specializing in surgery, we quote the following:
"Q. Doctor, to assume a case where an individual is operated upon for a right inguinal hernia, the operation apparently being successful and recovery uneventful other than some atrophy of the right testicle, and assuming in that same case that this same individual has a relaxed inguinal ring on the left side, are you able to tell us whether or not, in your opinion, there is any relation as to cause and effect between the relaxed ring on the left side and the operative procedure on the right? A. If there was no operative work done on the left side at the time of the operative procedure was carried on on the right side, then there would be, in my opinion, no possible relationship between the relaxation of the left inguinal ring and the operative procedure correcting the right inguinal hernia.
"Q. Well, could, Doctor, an operation for an inguinal hernia on the right side of an individual cause hernia on the left side of the same individual, there being no operative procedure on the left side at all. A. In an uncomplicated recovery from a right inguinal hernioplasty, there could be no possible connection with the relaxation of the inguinal ring on the left side.
"Q. What is the relation between the two sides, are they all tied in to one set of muscles, or separated, or to put it differently, *Page 70 
tell us, if you will, Doctor, the anatomical set-up? A. The human body is constructed in a bilateral and symmetrical manner. With specific regard to the abdominal structures, the sides, the musculature composing the abdominal wall, together with the fascia, blood supply and nerve supply are entirely independent of each other. The midline of the abdominal wall separates the two sides of the abdomen; the nerves and blood vessels which supply the muscles and the fascia of the abdominal wall do not cross the midline of the abdomen. In short, there is no inter-relationship between the two except in the direct contiguity of tissues where they meet in the midline. The inguinal rings of the abdomen are well over to the lateral side of the abdominal wall and there is absolutely no inter-relationship between the two regions.
"Q. Then, as I understand you, the operative procedure on the right side, and the surgery necessary in connection, could not in your opinion cause a relaxation or otherwise affect the left inguinal region? A. No.
"Q. It could not? A. No."
Dr. Marvin T. Green, another specialist in surgery, testified on behalf of defendant that he had examined plaintiff on or about November 9, 1945. The portion of the testimony of this witness bearing on the particular point at issue is as follows:
"Q. You have been practicing surgery, how long, Doctor? A. Since 1928.
"Q. During that time I presume that you have had many hernia operations? A. Yes, sir; I have.
"Q. Is it possible for an operation of an inguinal hernia on the right side to cause a hernia on the left side? A. No, Sir; it wouldn't cause a hernia.
"Q. Is it possible, Doctor, — A. I don't like to deal in possibilities, — but I wouldn't say that a repair of a hernia on one side would be calculated to produce a hernia on the other side — No, Sir.
"Q. Have you ever seen such a case, Doctor, where the patient claimed that the operation for a hernia on one side, had caused hernia on the other side? A. No."
Dr. G.H. Robinson, who performed the herniotomy for the repair of plaintiff's right inguinal hernia, and who kept plaintiff under observation, testified as follows:
"Q. Did your operational procedure work? A. Yes, I repaired the hernia.
"Q. If a hernia is repaired, or if you have an operation for hernia on the right side and it causes a hernia on the left side, what do you say about that theory? A. I don't think it would cause it on the other side.
"Q. Why, Doctor? A. There are two sides of the body, the muscles on one side are not connected, they are connected to a facia. If one side is pulled very much, it would tear the facia.
"Q. The facia goes up and down? A. Yes.
"Q. Did you examine this man? A. Yes, on November 2nd.
"Q. What did he have? A. An enlarged left ring.
"Q. You treated this man, you operated on him, you observed him, from August until you last saw him in November, 1945, I will ask you to state from those examinations and your intimate knowledge if there is any connection between the relaxed ring on the left side and the operational procedure on the right? A. Not at all.
"Q. I understood you to say he had a relaxed ring and not a hernia on his left side? A. Yes."
It is noted that counsel for plaintiff made no cross-examination of Drs. Hunter, Snellings and Green, and his examination of Dr. Robinson was confined to three questions dealing with the date of the last examination of plaintiff and the doctor's opinion as to his ability to return to work.
In support of his claim plaintiff largely relies upon the testimony of Dr. T.A. Dekle. This witness testified, on direct examination, that he had examined plaintiff on a number of occasions and that in his opinion the first hernia was received in the course of plaintiff's employment, and the second hernia "was due to the repair of the first hernia". This opinion was elaborated by the witness on cross-examination. *Page 71 
The particularly pertinent points as developed by this examination are as follows:
"Q. How is it possible for the repair of the hernia on the right side to produce a hernia on the left side? A. The pulling of the tissues on the right released support on the left side causing the hernia on the left side.
"Q. How does it do that? A. When it is pulled over repairing the hernia on the right side that pulls the tissues on the left side so the ring could be stretched apart on the left.
"Q. Where is the incision? A. In the inguinal region.
"Q. What muscles? A. Oblique muscles.
"Q. Where is the repair made? A. The facia was attached and pulled tightly.
"Q. Where are the oblique muscles? A. Fastened on the middle line and oblique ligaments run from the sacrum down to the pubis.
"Q. You think in making this repair, it was pulled so tight that it affected the muscles on the left side? A. Yes.
"Q. How many have you seen like that? A. 12 or more.
"Q. When? A. When I was interning.
"Q. When was the last one? A. This one.
"Q. You have seen 12 or more like that? A. Yes, sir.
"Q. Have you seen a left hernia develop from the repair of a right hernia? A. Yes.
"Q. And you have seen 12 or more of these cases that from an operation on one side a hernia resulted on the other side? A. Yes.
"Q. Have you seen other local cases other than this man? A. Yes, we have had some here in Jonesboro, too. It is not a reflection on the surgeon, he made a good repair, but a little too tight.
"Q. You haven't talked to Dr. Robinson about this matter? A. No.
"Q. You haven't examined him since November? A. No, not for hernia.
"Q. There is no sack formed? A. Not in the scrotum."
Dr. C.S. McDonald appeared as a witness for plaintiff, but was questioned only with reference to the existence of a hernia on the left side. This witness testified that he did not form any opinion as to when or how the hernia had been sustained.
Analyzing the testimony of the witnesses, all of whom are distinguished, reputable and able practitioners of their profession, we are impressed with the fact that three skilled specialists in surgery testified, without qualification, that a left inguinal hernia could not result from operative repair of a right inguinal hernia. This view was supported by the opinion of an able doctor of medicine who had made a complete physical examination of plaintiff. Of these four witnesses only one, Dr. Snellings, did not have the benefit of an examination of plaintiff, notwithstanding which we are particularly impressed with his testimony, since more than any other witness he explained in some detail the reasons for his conclusion through reference to the anatomical structure of the human body. The very lucid and understandable explanation by this witness is borne out by our references to standard anatomical charts and texts on surgery.
Standing alone against the opinions expressed by defendant's witnesses, we find the testimony of plaintiff's only medical expert. This distinguished gentleman was equally positive in expressing his unqualified opinion that plaintiff's left inguinal hernia was the direct result of the operative procedure for the repair of his right inguinal hernia.
As usual, this Court finds itself unable to reconcile the conflict in testimony, but we hold, as did the distinguished Judge of the District Court, that the testimony on this particular point overwhelmingly preponderates in favor of the defendant. While it is true that the effect of testimony is not to be determined solely upon the basis of numbers of witnesses, certainly no Court would be justified in refusing to accept the logical and convincing expressions of opinion on the part of four expert witnesses in favor of a contrary opinion *Page 72 
expressed by a single expert witness, the qualifications, reputations and ability of all the witnesses being conceded.
As we have stated above, the determination of this case rests solely upon an issue of fact, and, certainly, we find no manifest error in the judgment of the lower Court.
For the reasons assigned, the judgment appealed from is affirmed.